O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

STEVEN SINOHUI,                    )   Case No. EDCV 10-908 RNB
                                   )
                    Plaintiff,     )
                                   )   ORDER REVERSING DECISION OF
         vs.                       )   COMMISSIONER AND REMANDING
                                   )   FOR PAYMENT OF BENEFITS
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
                    Defendant.     )
                                   )

         Plaintiff filed a Complaint herein on June 17, 2010, seeking review of the Commissioner's denial of his applications for disability insurance and Supplemental Security Income benefits.  In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt Stip") on February 24, 2011.  Thus, this matter now is ready for decision.[1]

## DISPUTED ISSUES

         As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising

---

[1]      The decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1    as the grounds for reversal and remand are as follows:

2         1.    Whether the Administrative Law Judge ("ALJ") properly

3    considered the opinions of Dr. Gary Frykman, M.D., a board-certified

4    orthopedic surgeon who examined plaintiff on April 28, 2008 as an

5    Agreed Medical Examiner for plaintiff's worker's compensation claim..

6         2.    Whether the ALJ properly assessed the opinions of Dr.

7    Edwin Ashley, M.D., a board-certified orthopedic surgeon who

8    specialized in hand surgery.

9         3.    Whether the ALJ properly considered the December 5,

10   2008 opinions of State agency physician A. Wong, M.D.

11        4.    Whether the ALJ properly assessed the medical evidence.

12        5.    Whether the ALJ properly assessed the credibility of

13   plaintiff and his wife.

14        6.    Whether the ALJ properly addressed the April 2, 2009

15   opinions of Dr. Ana-Maria Osorio, M.D., plaintiff's treating psychiatrist.

16        7.    Whether the ALJ properly assessed plaintiff's mental

17   capacity.

18

19                          **DISCUSSION**

20   **A.    Reversal is not warranted based on the ALJ's alleged failure to properly**

21        **assess the medical evidence.**

22        In Disputed Issue No. 4, plaintiff contends that the ALJ failed to "fully"

23   address "the evidence of plaintiff's surgeries since the 2005 onset date and the follow

24   up for them." (See Jt Stip at 21.)  For the reasons stated by the Commissioner (see

25   Jt Stip at 22-23), the Court finds and concludes that reversal is not warranted based

26   on this particular alleged failure.  The ALJ's February 12, 2010 decision reflects his

27   consideration of the medical evidence that was added to plaintiff's file after the ALJ

28   rendered his September 25, 2008 decision.  (See AR 14-18.)  The ALJ's September

                                    2

25, 2008 decision (which the ALJ purported to incorporate by reference into his 2010 decision, see AR 14) reflects the ALJ's consideration of the earlier medical evidence. (See AR 62-64.)  To the extent that plaintiff disagrees with the ALJ's assessment of the medical evidence, the Court will address plaintiff's specific contentions in the next sections.

**B.     Reversal is not warranted based on the ALJ's alleged failure to properly consider Dr. Frykman's opinions.**

With respect to Disputed Issue No. 1, the Court concurs with plaintiff that the ALJ impliedly rejected Dr. Frykman's opinions on plaintiff's work restrictions by failing to incorporate all of those functional limitations into his RFC determination. In particular, the ALJ failed to incorporate Dr. Frykman's preclusion of "continuous, repetitive neck movement." The ALJ also failed to incorporate Dr. Frykman's preclusion of "forceful gripping, pushing, pulling, torquing, or continuous finger motion activities with either wrist or hand," although the ALJ did preclude "work requiring repetitive, forceful grasping." (Compare AR 928 to AR 12.)

To reject the uncontradicted opinion of an examining physician, an ALJ must provide "clear and convincing" reasons.  Even if contradicted by another doctor, the opinion of an examining doctor can only be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record.  See Regennitter v. Commissioner, 166 F.3d 1294,1298-99 (9th Cir. 1999); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  Thus, the fact that certain of the work restrictions to which Dr. Frykman opined may have been contradicted by the opinion of Dr. Boeck, the orthopedic consultative examiner (see AR 1980-85) to whose opinions the ALJ accorded "significant" weight (see AR 17) was not in itself a sufficient reason for rejecting the work restrictions to which Dr. Frykman opined, but rather merely was determinative of the governing standard for doing so.

1    Here, it appears to the Court that the only comments made by the ALJ in his
2    February 12, 2010 decision that could possibly be deemed "reasons" for rejecting the
3    work restrictions to which Dr. Frykman opined were the ALJ's general comments to
4    the effect that workers' compensation opinions are based on criteria other than Social
5    Security Regulations and constitute opinions on an issue reserved to the
6    Commissioner.  (See AR 16.)

7    However, Dr. Frykman's opinions on plaintiff's work restrictions do not
8    constitute opinions on an issue reserved to the Commissioner.  Further, the fact that
9    Dr. Frykman's opinions were based on workers' compensation criteria was not a
10   "specific and legitimate" reason for rejecting those opinions.  See, e.g., Lester, 81
11   F.3d at 832 (holding that ALJ erred in rejecting a physician's reports because they
12   "were clearly obtained by the claimant's attorney for the purpose of litigation," and
13   stating that "[t]he purpose for which medical reports are obtained does not provide
14   a legitimate basis for rejecting them"); Coria v. Heckler, 750 F.2d 245, 247-48 (3d
15   Cir. 1984) (holding that ALJ erred in failing to consider medical reports submitted
16   in state workers' compensation proceeding); Booth v. Barnhart, 181 F. Supp. 2d
17   1099, 1105 (C.D. Cal. 2002) (stating that "the ALJ may not disregard a physician's
18   medical opinion simply because it was initially elicited in a state workers'
19   compensation proceeding").

20   Nevertheless, the Court has concluded that the ALJ's error in failing to
21   properly consider Dr. Frykman's opinions in itself does not warrant reversal of the
22   Commissioner's decision.  In his post-hearing vocational interrogatory, the ALJ did
23   ask the vocational expert whether, considering the work restrictions to which Dr.
24   Frykman had opined, there was any unskilled, entry level work that could be
25   performed and the vocational expert responded in the affirmative, identifying three
26   jobs existing in the regional and national economies that could be performed.  (See
27   AR 134-35.)  The Court therefore finds that any error by the ALJ in failing to
28   properly consider the work restrictions to which Dr. Frykman opined was harmless.

4

1   See Stout v. Commissioner of Social Security, 454 F.3d 1050, 1055 (9th Cir. 2006)

2   (an ALJ's error is harmless where such error is inconsequential to the ultimate non-

3   disability determination); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A

4   decision of the ALJ will not be reversed for errors that are harmless."); Curry v.

5   Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review

6   of administrative decisions regarding disability).

7

8   **C.    Reversal is not warranted based on the ALJ's alleged failure to properly**

9        **assess Dr. Ashley's opinions.**

10       For the same reasons the Court found that the ALJ impliedly rejected the work

11  restrictions to which Dr. Frykman opined, the Court finds that the ALJ impliedly

12  rejected the work restrictions to which Dr. Ashley opined in his August 28, 2008

13  Permanent and Stationary Status Report. (See AR 1092-93.) Moreover, for the same

14  reasons the Court found that the ALJ erred in failing to properly consider Dr.

15  Frykman's opinions, the Court finds that the ALJ erred in failing to properly consider

16  Dr. Ashley's opinions.

17       However, because the Court finds that the hypotheticals posed to the vocational

18  expert encompassed all the work restrictions to which Dr. Ashley opined, the Court

19  also finds that any error by the ALJ in failing to properly consider the work

20  restrictions to which Dr. Ashley opined was harmless.

21

22  **D.    Reversal is not warranted based on the ALJ's alleged failure to properly**

23        **consider Dr. Wong's opinions.**

24       With respect to Disputed Issue No. 3, the Court notes that, even if the ALJ

25  erred in failing to properly consider Dr. Wong's opinion that plaintiff was limited to

26  frequent handling and fingering, that limitation was no more restrictive than the

27  handling and fingering work restrictions to which Drs. Frykman and Ashley opined.

28  Accordingly, for the same reasons the Court found harmless any error by the ALJ in

failing to consider the work restrictions to which Drs. Frykman and Ashley opined, the Court also finds harmless any error by the ALJ in failing to properly consider Dr. Wong's opinion that plaintiff was limited to frequent handling and fingering.

**E.   The Court is unable to affirm the ALJ's adverse credibility determinations.**

Disputed Issue No. 5 is directed to the ALJ's adverse credibility determinations with respect to plaintiff and his wife.

1.   Plaintiff

At the first administrative hearing held on August 18, 2008, plaintiff testified in response to questions from his counsel that he had severe neck pain; that he had problems lifting things; that he had complete numbness in his hands, and severe pain in the wrist and elbows; that his fingers would get stuck together and sometimes lock; that he had problems lifting both arms; and that he had minimal movement in his wrists from side to side.  (See AR 48-49.)  Plaintiff further testified that he had problems with depression; that there were times when he had suicidal thoughts because of his physical condition; and that because of his pain and depression, he had problems concentrating and could not focus on things.  (See AR 49.)  The ALJ posed no questions to plaintiff at the first administrative hearing.

In his ensuing September 25, 2008 hearing decision, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms," but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below."  (See AR 62.)  The only statements made by the ALJ thereafter in the decision that appear to constitute "reasons" for not crediting plaintiff's subjective testimony were: (a) "[h]is current treatment through Kaiser is

6

1  minimal and conservative with no suggestion for future surgeries or even epidural
2  injections"; (b) "[t]he claimant's allegations are not fully credible or supported for
3  causality by the medical evidence records"; and (c) "[t]he claimant's mental health
4  treatment is minimal and conservative as evidenced by the medical records and the
5  admissions of the claimant."  (See AR 63.)  However, it appears from statements
6  made earlier in the decision that the ALJ also based his adverse credibility finding on
7  "the discrepancy between the severity of the claimant's pain/depression complaints,
8  and his actual treatment, and diagnostic and clinical test results," although the ALJ
9  failed to specify precisely what he was referring to.  (See AR 62.)  It further appears
10 from the following statements made earlier in the decision that the ALJ also based his
11 adverse credibility finding on his perceptions of plaintiff's presentation and demeanor
12 at the hearing:

13          "The claimant made a singular appearance and he affected a cervical
14          pillow, like the kind sold in airport gift shops, and bilateral wrist
15          gauntlets which looked unworn, as if they had just come out of the box.
16          The claimant assumed a slumping position in the chair so that his face
17          was almost at table level.  It looked to be an affected and most
18          uncomfortable position. [¶] These factors lent an air of exaggeration to
19          his whole presentation."  (AR 61.)

20

21         The Appeals Council likewise construed the ALJ's adverse credibility
22 determination as based at least in part on his perceptions of plaintiff's presentation
23 and demeanor at the hearing.  In its November 6, 2008 order granting plaintiff's
24 request for review, the Appeals Council found that the ALJ's decision was not
25 supported by substantial evidence.  (See AR 105.)  With respect to the ALJ's adverse
26 credibility determination, the Appeals Council cited the ALJ's reference to plaintiff's
27 use at the hearing of a cervical pillow and wrist gauntlets, and to plaintiff's sitting
28 position which the ALJ had perceived as an "exaggeration of his presentation."  The

1   Appeals Council stated that, if the ALJ "was to use his perceptions as to the
2   claimant's posturing and physical aids, then testimony should have been solicited
3   from the claimant as to his posture and use of the devices." (See AR 106.) The
4   Appeals Council directed the ALJ on remand inter alia to "[f]urther evaluate the
5   claimant's subjective complaints and provide rationale in accordance with the
6   disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529) and
7   Social Security Ruling 96-7p." (See id.)

8       At the administrative hearing on remand held on September 30, 2009, plaintiff
9   testified that his symptoms had gotten worse since the last hearing. He explained that
10  he had to have an ulnar nerve transposition of his right elbow; that the ulnar nerve in
11  his left elbow also was more severe than it was previously; that his carpal tunnel in
12  his right hand was returning; and that he had numbness completely in his left hand.
13  Plaintiff further testified that he was having severe pain in his legs, and also severe
14  cervical pain; that he could not turn to the left "very good"; that he was using a TENS
15  unit to relieve some of the pain; that he needed further surgery on his right shoulder;
16  and that he was experiencing a narrowing of the joint in his left shoulder. (See AR
17  31.) According to plaintiff, his doctors also were recommending another ulnar nerve
18  transposition on his left hand. (See AR 35.)

19      Plaintiff's attorney also questioned plaintiff about his posturing and use of
20  physical aids at the previous hearing. Plaintiff explained that he had worn the
21  cervical pillow at the suggestion of his psychiatrist to try to use a cervical pillow to
22  relieve tension whenever he needed to sit down, and that he now was using a TENS
23  unit instead, which was more effective in relieving discomfort or pain. Plaintiff
24  further explained that his sitting position at the previous hearing had been due to his
25  attempt to relieve his neck pain with the cervical pillow, and that using the TENS unit
26  instead enabled him to sit up straighter and hold his neck up. (See AR 32.) As to his
27  use of wrist gauntlets at the previous hearing, plaintiff explained that he had severe
28  pain in his wrists and limited movement; that he gets new wrist bands every six

months through a prescription; and that his wife, who was a licensed nurse, makes him change the wrist bands due to sanitary reasons.  (See AR 33-34.)

Plaintiff described his neck pain and testified that he used traction at home every day for it.  Plaintiff also testified that he had received trigger point injections in the neck, and had received three recently in his right shoulder, but the pain kept coming back.  He also had received steroid injections, including in both his hands, which had only temporarily helped. (See AR 32.)

Plaintiff also testified that he could not lift his arms "up to a certain degree" or reach without experiencing severe pain.  He had three cortisone injections within the past six or eight months, but they only temporarily relieved the pain. (See AR 35-36.)

Plaintiff also testified to having severe pain in his legs that was growing worse, which his doctors believed was due to neuropathy.  They were giving him medications and steroids, but the medications only reduced the pain slightly and caused side effects.  (See AR 36-37.)

Plaintiff also was asked about the treatment he was receiving for mental symptoms. He testified that he had been treated for mental symptoms since 2006, and took medications.  He claimed to have had thoughts of hurting himself sometimes on a daily basis.  (See AR 37.)

In response to questioning by the ALJ, plaintiff testified that he could only stand for 15-20 minutes at a time, walk the distance to two houses, lift no more than five pounds with either extremity, and tolerate sitting for 25-30 minutes at a time. (See AR 38.) Plaintiff further testified that, in a typical day, he spent most of the time in traction, lying in bed.  His wife made lunch and his kids did "mostly everything" around the house. He basically just spent his time trying to relieve the pain. (See AR 38-39.)  When asked if he drove an automobile, plaintiff responded "Fifty-fifty," explaining that most of the time he tried to get a ride, but if he could not get a ride, he would drive himself to the doctors.  In the year 2009, the farthest he had driven was for about 20 minutes.  He had a current California driver's license, which had no

9

restrictions on it.  (See AR 40.)

In his ensuing February 12, 2010 hearing decision, the ALJ again found that "the claimant's medically determinable impairment[2] could reasonably be expected to produce the alleged symptoms," but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below."  (See AR 13-14.)  As best the Court can glean from the decision, the ALJ's "reasons" for not crediting plaintiff's subjective testimony were as follows:

1.    "The claimant's testimony was quite hyperbolic and is unsupported by documented pathology."  (See AR 12.)

2.    According to a medical report dated March 6, 2009 by plaintiff's treating psychiatrist, Dr. Osorio, plaintiff "'did not increase Venlafaxine dose as planned because he was afraid the increase [sic] dose of Venlafaxine was responsible for his [severe headaches, cold

---

[2]    Although the ALJ used the word "impairment" in the singular, the Court presumes that this was a typographical mistake, since the ALJ had acknowledged earlier in the decision that plaintiff had a treatment history regarding depression and anxiety, although this time the ALJ found that plaintiff's mental impairments were not severe.  (See AR 11, 17.)  Nowhere in the decision did the ALJ expressly state that there was no evidence of a medically determinably mental impairment in the record.  Indeed, the consultative psychiatric examiner on whose opinions the ALJ relied in his first decision diagnosed plaintiff as suffering from major depression and an anxiety disorder (see AR 361-62, 388), and the consultative psychiatric examiner on whose opinions the ALJ relied in his second decision diagnosed plaintiff as suffering from a mood disorder secondary to his general physical condition (see AR 1973).  Thus, any finding by the ALJ that there was no evidence of a medically determinably mental impairment in the record would have been contrary to their opinions, not to mention contrary to the opinions of plaintiff's treating physician, Dr. Osorio, and the State agency physician, Dr. Smith, which are addressed in the next section.

sweats, and chills]'  This demonstrates a possible unwillingness to do that which is necessary to improve his condition.  It may also be an indication that his symptoms are not as severe as he purports." (See AR 16.)

3.    "[D]espite the claimant's asserted symptoms, he testified that he could still drive up to 20 miles at a time and he renewed his California driver's license in 2009." (See AR 18.)

4.    "[S]ome of the physical and mental abilities and social interactions required in order to perform the above-described activities of daily living are the same as those necessary for obtaining and maintaining employment." (See id.)

5.    "The claimant's ability to participate in the activities of daily living, stated above, undermined the credibility of the claimant's allegations of functional limitations." (See id.)

6.    "The claimant's alleged impairments are remediable with current conservative care." (See id.)

Where the claimant has produced objective medical evidence of an impairment or impairments that could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See, e.g., Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1986); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).

Here, although the ALJ characterized plaintiff's testimony as "quite hyperbolic" (see AR 12), he did not make an express finding of malingering or even

11

1   use the word "malingering" anywhere in either of his hearing decisions.  Nor has the

2   Commissioner purported to cite any affirmative evidence of malingering in the

3   record.  Accordingly, the issue before the Court is whether the reasons provided by

4   the ALJ for his adverse credibility determination satisfy the standard set forth above.

5          For the reasons stated by plaintiff (see Jt Stip at pp. 25-27, 31-32), the Court

6   finds that the ALJ's first stated reason (i.e., his belief that plaintiff's testimony was

7   out of proportion to the medical evidence of record) does not constitute a clear and

8   convincing reason for rejecting plaintiff's excess pain and symptom testimony.  The

9   ALJ seemingly was imposing on plaintiff a burden that he did not have under

10   governing Ninth Circuit law.  See, e.g., Gonzalez v. Sullivan, 914 F.3d 1197, 1201

11   (9th Cir. 1990) ("The ALJ's opinion indicates that he probably disbelieved the excess

12   pain testimony because it was 'out of proportion to the medical evidence'--an

13   inadequate reason, since it is the very nature of excess pain to be out of proportion to

14   the medical evidence."); Cotton, 799 F.2d at 1407 ("Requiring full objective

15   confirmation of pain complaints before believing them 'would overlook the fact that

16   pain is a highly idiosyncratic phenomenon, varying according to the pain threshold

17   and stamina of the individual victim,' and it would trivialize the importance that we

18   have consistently ascribed to pain testimony, rendering it, in the final analysis, almost

19   superfluous.").

20          For the reasons stated by plaintiff (see Jt Stip at 33), the Court finds that the

21   ALJ's second stated reason, which was based on a single notation in the record that

22   plaintiff had not increased his Venlafaxine dose as planned, also does not constitute

23   a clear and convincing reason for rejecting plaintiff's excess pain and symptom

24   testimony.  It appears from the treatment note that plaintiff had a bona fide reason for

25   not increasing the dose--he only took the higher dose once because he was afraid that

26   the increased dose was responsible for the severe headaches, cold sweats, and chills

27   he had experienced.  (See AR 1680.)  The same treatment note appears to reflect his

28   treating psychiatrist's advice to increase the Venlafaxine in about a week after

1    starting the process of tapering off another of his prescribed drugs to avoid further

2    weight gain.  (See AR 1681.)  Thus, the record simply does not support the ALJ's

3    supposition that this one instance of plaintiff not complying with his prescribed

4    medications "demonstrates a possible unwillingness to do that which is necessary to

5    improve his condition" and/or "may also be an indication that his symptoms are not

6    as severe as he purports."  See also Buckard v. Astrue, 2010 WL 5789044, *16 (D.

7    Or. Dec. 7, 2010) (holding that the claimant's non-compliance with her depression

8    medications did not constitute a legitimate basis for discrediting her testimony).

9         The ALJ's third, fourth, and fifth stated reasons relate to plaintiff's daily

10   activities.  However, as the Commissioner seemingly acknowledges in his discussion

11   of the daily activities issue, the only activity that the ALJ could have been referring

12   to was plaintiff's admitted ability to drive.  (See Jt Stip at 30.)  The Court's review

13   of the hearing decision does not reveal the discussion of any other daily activities to

14   which the ALJ could have been referring.  Contrary to the ALJ's characterization,

15   plaintiff did not testify that he could still drive up to 20 miles at a time (see AR 13,

16   18) or that he had renewed his driver's license in 2009 (see AR 18).  Rather, plaintiff

17   testified at the September 30, 2009 hearing that, when he could not get a ride, he

18   would drive himself to his doctor's appointments; that the farthest he had driven in

19   2009 was for about 20 **minutes**; and that he had last renewed his license three years

20   earlier.  (See AR 40.)  The Court also notes that, although the ALJ apparently

21   considered plaintiff's admission to driving as inconsistent with his claimed inability

22   to rotate his head and neck, (a) plaintiff actually only testified at the September 30,

23   2009 hearing to an inability to turn to the left "very good" (see AR 31), which in the

24   Court's view is less critical to driving than an inability to check blind spots on the

25   right, and (b) one of the work restrictions to which Dr. Frykman opined was a

26   preclusion of "continuous, repetitive neck movement."  (See AR 928.)  In any event,

27   the Court finds that plaintiff's admission to driving for up to 20 minutes at a time

28   when he could not get a ride to his doctor appointments does not constitute a clear

13

and convincing reason for finding plaintiff's excess pain and symptom testimony not credible.  See, e.g., Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."); Gonzalez v. Sullivan, 914 F.3d 1197, 1201 (9th Cir. 1990) (holding that daily activities may not be relied upon to support an adverse credibility determination unless the ALJ makes an explicit finding to the effect that plaintiff's ability to perform those activities translated into the ability to perform appropriate work activities on an ongoing and daily basis); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

The Court finds that the ALJ's sixth stated reason (i.e., that plaintiff's alleged impairments were remediable with current conservative care) is wholly unsupported by the substantial evidence of record.  Plaintiff had undergone eight surgeries and additional surgeries were planned.  There was no evidence in the record that plaintiff's followup orthopedic treatment and pain management treatment, which included prescribed narcotics medications, had resolved his pain and other symptoms.  He still was under the care of a psychiatrist, and still taking psychotropic medications.  Accordingly, the Court finds that the ALJ's sixth stated reason also does not constitute a clear and convincing reason for rejecting plaintiff's excess pain and symptom testimony.

In response to plaintiff's contentions with respect to Disputed Issue No. 5, the Commissioner asserts that "it was not improper for the ALJ to consider plaintiff's demeanor during the hearing as part of the credibility analysis, citing the page in the

14

1   ALJ's September 25, 2008 hearing decision on which the ALJ discussed plaintiff's

2   demeanor and presentation at the first administrative hearing and the page in the

3   ALJ's February 12, 2010 hearing decision on which the ALJ purported to incorporate

4   his prior decision. (See Jt Stip at 31.)  As noted above, at the September 30, 2009

5   administrative hearing, plaintiff was questioned about his posturing and use of

6   physical aids at the previous hearing, and he did provide an explanation.  Nowhere

7   in his second hearing decision did the ALJ discuss plaintiff's explanation or provide

8   reasons for not crediting it.  The Court therefore finds that, even if the ALJ did intend

9   to incorporate the comments about plaintiff's demeanor and presentation from his

10  September 25, 2008 hearing decision as a "reason" for not crediting plaintiff's

11  testimony, that reason does not constitute a clear and convincing reason for purposes

12  of the governing standard.

13          In conclusion, the Court finds that none of the reasons provided by the ALJ for

14  his adverse credibility determination satisfies the governing standard.

15

16          2.    Plaintiff's wife

17          In conjunction with plaintiff's initial benefits application, plaintiff's wife

18  completed a third party adult function report on September 24, 2006.  She stated

19  therein inter alia that plaintiff normally stayed in his room during the day and was not

20  sociable; that he did not take care of any other person; that she and the children

21  helped care for him; that plaintiff needed help dressing, bathing, and shaving, and that

22  his ability to feed himself was affected by his dropping of plates and cups; that he

23  needed reminders to take his medicines; that he did not prepare his own meals; that

24  he was in constant pain; that he was unable to do any household chores because "he

25  hurts constantly," and his "hands are numb constantly"; that he was able to drive a

26  car, but did not do any shopping; that he was unable to manage money because of his

27  inability to concentrate and his depression; that he no longer was able to engage in

28  any of his previous hobbies or interests (i.e., coaching sports, cooking, hiking, family

15

outings); that due to his constant pain, he did not engage in social activities; that as a result of his mental condition he did experience problems getting along with family and friends; and that his physical and mental problems affected all the areas of functional abilities listed on the form. (See AR 161-68.)

At the August 18, 2008 administrative hearing, plaintiff's wife provided testimony corroborative of her husband's testimony. She testified inter alia that, on a daily basis, she observed plaintiff having a problem with constant, significant pain; that he had gone from a hard working man to not being able to move; that he dropped plates; that she had to help him bathe, shave, and get dressed; that he spent most of the day lying down because of his pain; that he cried a lot; and that he had problems focusing on things or concentrating. (See AR 50-51.)

In his ensuing September 25, 2008 hearing decision, the ALJ provided the following reasons for not crediting plaintiff's wife's statements and testimony (see AR 62):

> 1.    "The statements made by the claimant's wife are not consistent with what the claimant told the psychiatric examiner (Exhibit 6F). He reported he could go out alone and in fact drove himself to the doctor unaccompanied."

> 2.    "The statements made by the wife were not given under oath and are no more than a repeating of the subjective complaints already testified to by the claimant. The claimant's credibility is suspect based on the discrepancy between the severity of the claimant's pain/depression complaints and his actual treatment, and diagnostic and clinical test results. The repetition of the claimant's subjective complaints through his wife does not make them any more credible."

> 3.    "The claimant's wife is not a medical professional and as a lay witness she is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to his ability to

16

1    work."

2          4.      "According to the questionnaire, she is helping to support

3    the claimant physically, emotionally, and financially. Therefore, she has

4    a financial interest in seeing the claimant receive benefits and her

5    opinion is not an unbiased one."

6          5.      "Most importantly, her statements are not supported by the

7    clinical or diagnostic medical evidence that is discussed more

8    thoroughly below."

9

10   At the September 30, 2009 administrate hearing, plaintiff's wife again provided

11   testimony corroborative of her husband's testimony. She testified that, since the first

12   hearing, she had noticed a decrease in her husband "wanting to do anything"; that he

13   was always wanting to lay in bed and did not want to communicate; that he was not

14   eating or sleeping very well; that he could not lift things and exhibited symptoms of

15   pain every time he moved; that he was constantly telling her he was in pain; that he

16   could not hold a dinner plate without dropping it; and that he still needed help

17   shaving and dressing. (See AR 41-43.)

18   In his ensuing February 12, 2010 hearing decision, the ALJ again found

19   plaintiff's wife's testimony not credible. His stated reasons were essentially the same

20   as the reasons provided in his earlier decision. (See AR 13.) These reasons were as

21   follows:

22         1.      "The claimant's wife is not a medical professional, and as

23   a lay witness, she is not competent to make a diagnosis or argue the

24   severity of the claimant's symptoms in relationship to his ability to

25   work."

26         2.      "The claimant's wife has a pecuniary and filial [sic]

27   motivation in trying to be helpful to the claimant so he can receive

28   benefits."

17

1          3.    "Therefore, I find her assertions are not credible as they are

2  not supported by any medically determinable impairment."

3          4.    "Most importantly, her allegations in regards to the severity of the

4  claimant's symptoms are out of proportion to the medical evidence and are rebutted

5  by the assessments of the consultative examiners and the State agency physicians

6  which are discussed more completely below."

7

8          The law is well-established in this Circuit that lay witness testimony as to how

9  a claimant's symptoms affect the claimant's ability to work is competent evidence and

10  cannot be disregarded without providing specific reasons germane to the testimony

11  rejected. See, e.g., Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Smolen,

12  80 F.3d at 1288-89; Dodrill, 12 F.3d at 919.

13          Here, the first reason provided by the ALJ in his September 25, 2008 hearing

14  decision is not supported by the substantial evidence of the record.  Plaintiff's wife

15  did not state in the third party adult disability form that plaintiff was unable to drive

16  alone.  (See AR 164.)  Accordingly, there was no inconsistency.

17          As to the second reason provided by the ALJ in his September 25, 2008 hearing

18  decision, the fact that the statements made by plaintiff's wife in the third party adult

19  disability form were not made under oath is not a legitimate reason for discrediting

20  those statements.  The Social Security Administration does not require that the form

21  be completed under oath.  Nor does the fact that plaintiff's wife's statements were

22  corroborative of plaintiff's subjective complaints constitute a legitimate reason for

23  discrediting those statements.  See Dodrill, 12 F.3d at 918.  Moreover, to the extent

24  that the ALJ was tying his discrediting of plaintiff's wife's statements to his

25  discrediting of plaintiff's excess pain and symptom testimony, the Court already has

26  found that the ALJ failed to make a proper adverse credibility determination with

27  respect to plaintiff's testimony.

28          As to the third reason provided by the ALJ in his September 25, 2008 hearing

decision (which corresponds to the first reason provided by the ALJ in his February 12, 2010 hearing decision), the Court notes that, contrary to the ALJ's statement, plaintiff's wife was a medical professional. She was a licensed vocational nurse. (See AR 41.) Moreover, contrary to the ALJ's characterization, plaintiff's wife was not making a diagnosis or arguing the severity of plaintiff's symptoms in relationship to his ability to work. Rather, based on her personal observations, she was merely answering the questions on a Social Security Administration form and then testifying consistently therewith.

The fourth reason provided by the ALJ in his September 25, 2008 hearing decision (which corresponds to the second reason provided by the ALJ in his February 12, 2010 hearing decision) was bias due to familial relationship and pecuniary interest. However, that reason would apply with equal force to any member of the claimant's household providing testimony corroborative of the claimant's subjective testimony. Accordingly, the Court finds that this reason did not constitute a legitimate reason for rejecting plaintiff's wife's testimony. See Regennitter, 166 F.3d at 1298 (holding that bias was not a legitimate reason for discounting the corroborative testimony of the claimant's mother, who had testified inter alia that she was the claimant's sole source of support); Smolen, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."); Oh v. Astrue, 2011 WL 486592, *2 (C.D. Cal. Feb, 3, 2011) ("The ALJ's reasoning that witnesses who live with or support a plaintiff are not credible for reasons of bias cannot be considered legally proper, since the same rationale could be used to reject lay witness testimony in almost every case."); Traister v. Astrue, 2010 WL 1462118, *4 (C.D. Cal. Apr. 13, 2010) ("Although a relationship with the plaintiff can be one possible ground to question credibility, something more is required to show that a lay witness's testimony is so tainted by bias that it must be rejected."); Franklin v. Astrue, 2010 WL 330239, *2 n.3 (C.D. Cal. Jan. 21, 2010) ("The ALJ's additionally noted reason, that Plaintiff's husband

1    is biased because he has a financial interest in seeing Plaintiff receive Social Security

2    benefits, is not an appropriate reason to depreciate lay witness credibility.").

3        The fifth reason provided by the ALJ in his September 25, 2008 hearing

4    decision (which corresponds to the fourth reason provided by the ALJ in his February

5    12, 2010 hearing decision) was his belief that her statements and testimony regarding

6    the severity of plaintiff's symptoms were "out of proportion" to the medical evidence

7    of record.  The Ninth Circuit has held that inconsistency with medical evidence

8    constitutes a legitimate reason for discrediting the testimony of lay witnesses.  See,

9    e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236

10   F.3d 503, 511 (9th Cir. 2001).  However, the Ninth Circuit also has held that it is

11   error for the ALJ to reject the testimony by family members because the claimant's

12   medical records did not corroborate the claimant's alleged symptoms and pain.  See

13   Smolen, 80 F.3d at 1289.  Further, under the authorities cited above, the ALJ's belief

14   that a claimant's testimony is "out of proportion" to the medical evidence is an

15   inadequate reason for discrediting the claimant's excess pain and symptom testimony.

16   See Gonzalez, 914 F.3d at 1201; Cotton, 799 F.2d at 1407.  Given this conflicting

17   authority, and the Court's finding above that the ALJ failed to make a proper adverse

18   credibility determination with respect to plaintiff's excess pain and symptom

19   testimony, the Court is unable to affirm the ALJ's adverse credibility determination

20   with respect to plaintiff's wife's testimony based on this one stated reason, even if the

21   reason technically does qualify as a reason "germane" to the wife's testimony.

22       The only other reason for the ALJ adverse credibility determination with

23   respect to plaintiff's wife's testimony was the third reason provided in the February

24   12, 2010 hearing decision (i.e., that plaintiff's wife's assertions were "not supported

25   by any medically determinable impairment").  That reason makes absolutely no sense

26   given the ALJ's finding that plaintiff does suffer from a severe disorder of the

27   musculoskeletal system, the ALJ's acknowledgment that plaintiff has a treatment

28   history regarding depression and anxiety, and the ALJ's finding that plaintiff's

20

1  medically determinable impairments could reasonably be expected to produce his
2  alleged symptoms.

3       In conclusion, for the reasons discussed above, the Court is unable to affirm the
4  ALJ's adverse credibility determination with respect to plaintiff's wife's testimony.

5

6  **F.    The Court is unable to affirm the ALJ's determination that plaintiff does**
7  **not suffer from a severe mental impairment.**

8       The Court construes both Disputed Issue Nos. 6 and 7 as going to the issue of
9  whether the ALJ erred in his determination at Step Two of the Commissioner's
10 sequential evaluation process that plaintiff does not suffer from a severe mental
11 impairment. (See AR 11.)  In Disputed Issue No. 6, plaintiff challenges the ALJ's
12 rejection of the opinions of plaintiff's treating psychiatrist, Dr. Ana-Maria Osorio, as
13 reflected in a mental disorder questionnaire form dated April 2, 2009. (See AR 1721-
14 25.)  In Disputed Issue No. 7, plaintiff challenges the ALJ's rejection of the opinions
15 of one of the State agency physicians, Dr. Barbara Smith, as reflected in a mental
16 residual functional capacity assessment form dated December 10, 2008. (See AR
17 1664-66.)  Since both doctors' opinions post-dated the ALJ's September 25, 2008
18 decision, only the ALJ's February 12, 2010 decision is relevant to the Court's
19 determination of these two disputed issues.

20

21      1.    Dr. Osorio's opinions

22      In the April 2, 2009 mental disorder questionnaire form, Dr. Osorio reported
23 that she had been treating plaintiff every two weeks to three months since October 10,
24 2007, and had most recently seen him on January 22, 2009. (See AR 1725.)  She
25 diagnosed plaintiff as suffering from major depression, and opined inter alia that
26 plaintiff had "very poor concentration and capacity to complete tasks." (See AR
27 1723, 1724.)  With respect to the issue of plaintiff's ability to adapt to stresses
28 common to the work environment, including decision making, attendance, schedules,

21

and interaction with supervisors, Dr. Osorio wrote: "We do not see him as capable of adapting to a work situation." (See AR 1724.)

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester, 81 F.3d at 830; Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). Where the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

Here, the ALJ provided only two reasons for not crediting Dr. Osorio's opinions (see AR 16)[3]:

---

[3]     To the extent that the Commissioner has proffered reasons for not crediting Dr. Osorio's opinions that were not recited by the ALJ (e.g., her treatment notes reflected that she treated plaintiff conservatively with medication, etc., see Jt Stip at 35), the Court is unable to consider those reasons. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Ceguerra v. Sec'y of Health & Human Svcs., 933

(continued...)

1          1.     She was not an employment specialist, and she was

2    expressing an opinion on an issue reserved to the Commissioner;

3          2.     She accepted the claimant's statements and symptoms at

4    face value, and there is nothing in the medical treatment records to

5    suggest that any validity testing was performed or that she considered

6    whether plaintiff's subjective symptoms may have been motivated in

7    whole or in part by secondary gain.

8

9         The Court concurs with plaintiff that Dr. Osorio's opinion about plaintiff's

10   incapability of adapting to a work situation did not constitute an opinion on an issue

11   reserved to the Commissioner.  Likewise for Dr. Osorio's opinion that plaintiff had

12   "very poor concentration and capacity to complete tasks."  Moreover, even if Dr.

13   Osorio's opinions could properly be characterized as constituting an opinion on the

14   ultimate issue of disability, it still would not have relieved the ALJ of the obligation

15   to state specific and legitimate reasons for rejecting those opinions.  See, e.g.,

16   Reddick, 157 F.3d at 725; Lester, 81 F.3d at 830; Matthews v. Shalala, 10 F.3d 678,

17   680 (9th Cir. 1993); Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

18        As for the second reason provided by the ALJ, the Court is mindful of authority

19   holding that a treating or examining physician's opinion based on the plaintiff's own

20   complaints may be disregarded if the plaintiff's complaints have been properly

21   discounted.  See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602

22   (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997);

23   Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  Here, however, the Court

24   has found that the ALJ did not make a proper adverse credibility determination.

25

26   _____

27        [3](...continued)

28   F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision
     only on the grounds articulated by the agency.").

1   Further, the ALJ's statement about the lack of evidence of any "validity testing" in

2   Dr. Osorio's treatment records is tantamount to saying that Dr. Osorio's opinion was

3   not supported by sufficient objective findings, which is not a legitimate reason for

4   rejecting a treating physician's opinion.  See Embrey, 849 F.2d at 421 ("To say that

5   medical opinions are not supported by sufficient objective findings or are contrary to

6   the preponderant conclusions mandated by the objective findings does not achieve the

7   level of specificity our prior cases have required, even when the objective factors are

8   listed seriatim.").  Finally, the ALJ's assertion that there is nothing in the medical

9   treatment records to suggest that Dr. Osorio considered whether plaintiff's subjective

10  symptoms may have been motivated in whole or in part by secondary gain could be

11  invoked for any treating physician opinion supportive of the treating physician's

12  patient's disability benefits claim, and in the Court's view also does not constitute a

13  legitimate reason for not crediting Dr. Osorio's opinions.  The Court also notes that,

14  to the extent that the ALJ was intending to suggest by this comment that plaintiff may

15  have been exaggerating or manipulative in his presentation to Dr. Osorio due to his

16  motivation in whole or in part by secondary gain, both Dr. Linda Smith in her

17  consultative psychiatric evaluation reports of November 14, 2006 and June 8, 2007,

18  and Dr. Ana Maria Anda in her consultative psychiatric evaluation report of June 15,

19  2009 stated that they found no evidence of exaggeration or manipulation.  (See AR

20  360, 387, 1972.)

21      The Court therefore finds that neither of the reasons provided by the ALJ

22  constitutes a legitimate and specific reason for not crediting Dr. Osorio's opinions.

23

24      2.    Dr. Smith

25      In the December 10, 2008 mental residual functional capacity assessment form,

26  Dr. Smith opined inter alia that plaintiff was moderately limited in his ability to

27  understand and remember detailed instructions, in the ability to carry out detailed

28  instructions, and in the ability to interact appropriately with the general public.  (See

24

1   AR 1664-65.)   In his decision, the ALJ stated, "I disagree with the State Agency
2   physicians' assessment of the claimant's alleged mental impairment and find the
3   claimant's mental impairments are nonsevere." (See AR 17.)   The Court construes
4   this statement as an implicit admission by the ALJ that, if he had credited Dr. Smith's
5   December 10, 2008 assessment of plaintiff's alleged mental impairment, he would
6   have been compelled to find that plaintiff's mental impairment was severe.

7       The Commissioner's Regulations provide that, although ALJs "are not bound
8   by any findings made by [nonexamining] State agency medical or psychological
9   consultants, or other program physicians or psychologists," ALJs must still "consider
10  [their] findings and other opinions ... as opinion evidence, except for the ultimate
11  determination about whether [a claimant is] disabled," because such specialists are
12  regarded as "highly qualified ... experts in Social Security disability evaluation." See
13  20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). The Regulations further provide that
14  "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must
15  explain in the decision the weight given to the opinions of a State agency medical or
16  psychological consultant or other program physician, psychologist, or other medical
17  specialist." See 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2) (ii); see also Social
18  Security Ruling[4] ("SSR") 96-6p ("Findings ... made by State agency medical and
19  psychological consultants ... regarding the nature and severity of an individual's
20  impairment(s) must be treated as expert opinion evidence of nonexamining sources,"
21  and ALJs "may not ignore these opinions and must explain the weight given to these
22  opinions in their decisions.").

23      Here, without providing any explanation, the ALJ purported to give no weight
24  to Dr. Smith's opinions regarding the severity of plaintiff's mental impairment.
25  Although the ALJ did state that he had "generously" given plaintiff "a more

26  _____

27      [4]   Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903
28  F.2d 1273, 1275 n.1 (9th Cir. 1990).

1   restrictive residual functional capacity than assessed by the State agency physician
2   and consultative examiner" (see AR 17), that statement was untrue because the ALJ
3   did not include in his RFC assessment any mental limitations (see AR 12).

4       The Court therefore concurs with plaintiff that the ALJ failed to properly
5   consider Dr. Smith's opinions.  In excluding from his RFC determination Dr. Smith's
6   opinions that plaintiff was moderately limited in his ability to understand and
7   remember detailed instructions, in the ability to carry out detailed instructions, and
8   in the ability to interact appropriately with the general public, the ALJ implicitly
9   rejected those opinions without providing any reason for doing so.  This constitutes
10  error.  See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-8p, at *7 ("The RFC
11  assessment must always consider and address medical source opinions.  If the RFC
12  assessment conflicts with an opinion from a medical source, the adjudicator must
13  explain why the opinion was not adopted.").

14      The Commissioner contends that any error in the ALJ's not addressing Dr.
15  Smith's opinions in greater detail was harmless because the vocational expert
16  indicated in response to the ALJ's interrogatory that, if plaintiff were limited to
17  unskilled light work, there were jobs that could be performed.  (See Jt Stip at 39,
18  citing AR 134-35.)  However, the ALJ's query of the vocational expert did not
19  include a limitation to work in a nonpublic setting, which was one of the limitations
20  assessed by Dr. Smith.  The Court therefore rejects the Commissioner's harmless
21  error argument.

22

23      3.   Conclusion

24      A psychiatric impairment may be found "not severe" at Step Two of the
25  Commissioner's sequential evaluation process only where the impairment "has no
26  more than a minimal effect" on the claimant's mental ability to perform basic work
27  activities.  If a finding of non-severity is not "clearly established by medical
28  evidence," adjudication must continue through the sequential evaluation process.  See

1  SSR 85-28; SSR 96-3p; see also Yuckert v. Bowen, 841 F.2d 303, 306-07 (9th Cir.

2  1988); McDonald v. Secretary of Heath & Human Svcs., 795 F.2d 1118, 1124-25 (1st

3  Cir. 1986).   Here, based on the ALJ's error in failing to properly consider the

4  opinions of Dr. Osorio and Dr. Smith, the Court is unable to affirm the ALJ's Step

5  Two determination that plaintiff did not suffer from a severe mental impairment.[5]

## CONCLUSION AND ORDER

8       The law is well established that the decision whether to remand for further

9  proceedings or simply to award benefits is within the discretion of the Court.  See,

10 e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at

11 603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  Remand is warranted

12 where additional administrative proceedings could remedy defects in the decision.

13 See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at

14 635.  Remand for the payment of benefits is appropriate where no useful purpose

15 would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d

16 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v.

17 Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily

18 delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

19     Ordinarily, when the Court finds that the ALJ erred at Step Two of the

20 Commissioner's sequential evaluation process, it is the Court's practice to remand for

21 further administrative proceedings so that the Commissioner can continue the

---

24     [5]    The Court also notes that the ALJ's nonseverity finding is inconsistent
25 with the opinion of Dr. Anda that, as a result of plaintiff's mental impairment, he is
26 only capable of understanding, remembering, and carrying out simple one or two step
   job instructions.  (See AR 1974.)  Although the ALJ stated that he was according Dr.
27 Anda's findings "great weight" (see AR 17), his failure to incorporate into his RFC
28 determination the foregoing limitation constituted an implied rejection of that opinion
   for which the ALJ provided no reasons.

1   sequential evaluation process starting at Step Three.

2          However, the Ninth Circuit has held that "the district court should credit

3   evidence that was rejected during the administrative process and remand for an

4   immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons

5   for rejecting the evidence; (2) there are no outstanding issues that must be resolved

6   before a determination of disability can be made; and (3) it is clear from the record

7   that the ALJ would be required to find the claimant disabled were such evidence

8   credited." See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see also, e.g.,

9   Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000)[6];

10  Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1399-1401 (9th Cir.

11  1988); Lester, 81 F.3d at 834; Pitzer v. Sullivan, 980 F.2d 502, 506 (9th Cir. 1990);

12  Smolen, 80 F.3d at 1292; Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989).

13  Under the foregoing authorities, when this test is met, the Court will take the

14  improperly discredited testimony as true and not remand solely to allow the ALJ

15  another opportunity to make specific findings regarding that testimony.  This rule

16  applies not only to a claimant's improperly discredited excess pain and other

17  subjective symptom testimony, but also to lay witnesses' improperly discredited

18  testimony, and to improperly discredited opinions of a treating or examining

19  physician.

20         Here, the Court has found that the ALJ failed to provide legally sufficient

21  reasons for rejecting plaintiff's subjective testimony concerning his pain and

22  attendant functional limitations, and for rejecting the testimony of plaintiff's wife

23  regarding plaintiff's functional limitations.  The Court also has found that the ALJ

24  failed to provide legally sufficient reasons for rejecting the opinions of plaintiff's

25

26  _____

27         [6]     In Harman, the Ninth Circuit noted that this three-part test "really

28  constitutes a two part inquiry, wherein the third prong is a subcategory of the
    second." Harman, 211 F.3d at 1178 n.7.

treating physician, Dr. Osorio. It is clear to the Court that if the testimony of plaintiff and his wife and the opinions of Dr. Osorio were fully credited, the ALJ would be required to find plaintiff disabled.

The Court is mindful of Ninth Circuit authority suggesting that the "crediting as true rule" is not mandatory in the Ninth Circuit. See, e.g., Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). However, militating in favor of applying the "crediting as true" rule here is the fact that plaintiff now has been seeking benefits for over four and a half years. See Varney, 859 F.2d at 1398 (applying "crediting as true rule" where it already had been "well over five years" since the claimant initially applied for disability benefits); see also Vasquez v. Astrue, 572 F.3d 586, 593-94 (9th Cir. 2009) (applying "crediting as true rule" where, by the time the Circuit issued its decision, it already had been seven years since the filing of the claimant's benefits application). Also militating in favor of applying the "crediting as true rule" here is the fact that this particular ALJ already has been afforded the opportunity to correct the deficiencies of his prior decision.

The Court therefore has concluded that this is a case where remand for the payment of benefits is warranted.

Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for the payment of benefits.

DATED:  March 18, 2011

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE